Luz Porrata Doria Veve, represented by her tutor Miguel A. Barasorda, substituted by Jorge J. Serrallés, Plaintiff and Appellant, *v.* The Fajardo Sugar Company of Puerto Rico and Fajardo Sugar Company, Defendants and Appellees.

No. 12116. Decided May 7, 1962.

*Rafael Pastor* and *José A. Luiña* for appellant. *Gonzalo Sifre* for appellees.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Rigau, and Mr. Justice Dávila.

Per curiam.

On May 8, 1930, plaintiff, Luz Porrata Doria Veve, was found to be incapable of administering her property and governing herself. Her husband, Augusto O. Márquez, was designated tutor. By an order of October 18,

1940, the District Court of San Juan ordered and decreed "that in consideration of the complete recovery of Luz Delia Silva Porrata Doria Veve, the latter is competent to govern herself and to administer her property and, therefore, she is hereby rehabilitated as to all her civil rights... The tutelage exercised by petitioner Augusto O. Márquez, the petitioner's husband, is hereby terminated, and as she has approved the accounts of tutorship, executing in favor of her husband and tutor a release in settlement of account, the court orders the cancellation of the bond given by him to secure the discharge of his duties." By deed No. 220 of November 16, 1940, executed before Notary Public Francisco Rebollo López, Luz Porrata Doria gave her aforesaid husband a power of attorney as ample and sufficient as might be required and necessary in law.

Plaintiff and two sisters owned in common a farm dedicated to the cultivation of sugar cane. Fajardo Sugar Co.,[1] defendant herein, financed them and, consequently, it paid the taxes levied thereon. At one time Fajardo failed to pay the taxes and it acquired the property at the tax sale. The Porrata Doria sisters sued Fajardo Sugar on the ground that Fajardo was under the obligation to pay the taxes. Judgment for the plaintiffs was entered in that suit. We affirmed on appeal. *Porrata* v. *Fajardo Sugar Co. of P. R.*, 57 P.R.R. 615 (1940).

Fajardo Sugar Co. appealed to the Federal Court of Appeals for the First Circuit. Pending the appeal, the Porrata Doria sisters and Fajardo Sugar agreed to compromise all their pending issues and in return Fajardo would drop its appeal. Augusto O. Márquez, as agent of his wife and the other two Porrata Doria sisters, signed the compromise agreement. Fajardo was represented by John Bass. The agreement was signed in New York on October 28, 1941, and it

---

[1] Two companies were sued, but we shall refer to both as Fajardo Sugar.

was reproduced in a public deed in Puerto Rico on December 1, 1941. Augusto O. Márquez again appeared as attorney-in-fact of his wife and her sisters.

In September 1945, Luz Porrata Doria filed a petition for voluntary bankruptcy in the Federal District Court for the District of Puerto Rico, which was sworn to by petitioner herself before Notary Enrique Igaravídez. In December 1946, through her counsel and together with her two sisters, she filed a suit in the Humacao District Court against Puerto Rico Production Credit Association.

Nine years passed from the date the compromise agreement was signed. On January 3, 1951, the Humacao District Court, at the request of Augusto O. Márquez, issued an order declaring Luz Porrata Doria incompetent to govern herself and her properties, and designated Miguel Angel Barasorda as her tutor.

On August 24, 1953, Miguel Angel Barasorda filed the instant suit against Fajardo Sugar. On July 20 an amended complaint was filed. The prayer of the complaint reads:

"1. To declare null and void the document of settlement executed in behalf of the plaintiff and Fajardo in the City of New York in the year 1941.

"2. To declare null and void the mortgage executed in behalf of the plaintiff in favor of Fajardo, as per deed No. 101 of December 1, 1941, before Notary Raúl Benedicto.

"3. To order Fajardo to render an account of the income and benefits received by said company and by its stockholders, and to render an account of all the benefits produced by said farm during the years in which Fajardo Sugar Growers Association was in illegal possession of the farm, in collusion with Fajardo, and for the benefit of the latter and its stockholders.

"4. To declare and decide that, had the farm involved herein been devoted during the years in which Fajardo Sugar was in illegal possession thereof, to the best use and exploitation, said farm would have produced a sum in excess of $600,000, of which amount a one-third share belongs to the plaintiff.

"5. That in the alternative, defendants be sentenced to pay to the plaintiff as damages, a sum equal to one-third of what the farm involved herein might have produced during the years in which it was illegally in the hands of defendants, which sum, in the opinion of plaintiff, would exceed $200,000.

"6. Declaring and establishing that the benefits received by Fajardo, out of its illegal possession, have resulted in direct benefit to Fajardo Sugar Company and its unjust enrichment, the latter having had knowledge of the facts stated herein since the date of its organization.

"7. That plaintiff be granted any other remedy at law to which she might be entitled under the facts stated in this complaint, plus costs and attorney's fees."

The trial court dismissed the complaint. It held that "the declaration of judicial rehabilitation establishes the presumption of plaintiff's competency and it was not destroyed through evidence worthy of credit and supported (*sic*) by ample expert and oral testimony." It added: "For the documents of settlement to be null and void the plaintiff must have been mentally incapacitated during the dates on which they were executed. The court believes, and it so declares, that said documents are valid and binding on plaintiff. . . ."

In support of her appeal plaintiff challenges the validity of the order issued by the District Court of San Juan on October 18, 1946, rehabilitating plaintiff as to all her civil rights and terminating the tutorship that had begun in the year 1930. She bases her challenge on the fact that the San Juan District Court lacked jurisdiction to declare that plaintiff's incapacity had ended. She claims that this is so because "the court that entered the order of October 18, 1940, knew or should have known—took or should have taken judicial notice of the fact—that the recession or cure of the symptoms of a manic-depressive person known by the court to have been hospitalized in the Insane Asylum on several previous occasions, is not equivalent to a *recovery* from said illness,

neither in law nor in psychiatry." In addition to the fact that this question was not raised in the trial court and that "against the decree terminating the proceeding for incapacity, the interested parties may interpose a suit in the ordinary manner, by means of an oral and public trial", Civil Code, § 185—31 L.P.R.A. § 708—which action was not filed by the interested parties, the truth is that her position is not correct. Plaintiff's own expert witness, Dr. Troyano de los Ríos, asserted that when suffering from a manic-depressive psychosis, a person may, during periods of recession, understand the nature of certain acts. Dr. Troyano was questioned:

"Q . . . Does the fact that for a number of years a person suffers from a manic-depressive psychosis mean that that person has been incompetent during all that time?

"A. No. Not during all that time.

"Q. Such person has not been incompetent uninterruptedly?

"A. No. . . . During periods of recession, said person was not incapacitated.

"Q. Doctor, you mentioned psychotic events that leave residuals, not events that may leave residuals, and I would like to know whether the fact that an event may leave a residual means that that person has remained incompetent in connection with the acts of his civil life?

"A. No, sir."

Dr. Roselló, defendants' expert witness, testified as follows:

"Q. Whether in your opinion it is a characteristic of a manic-depressive psychosis for a patient to have periods of recession at which times he becomes normal?

"A. Yes, this may be found in many psychiatric books, which say that after an attack and sometimes many attacks of manic-depressive psychosis, thereafter the person almost always fails to present any impairment of his intellect, affectivity, and judgment.

" .      .      .      .      .      .      .      .

"Q. Does a person who suffers psychotic episodes such as those set forth in the record of this lady, during a period

of recession, enjoy sufficient mental capacity to understand civil acts, to legalize contracts, to live in society, etc.?

"A. If it happens during a period of recession, that person is certainly competent.

" .          .          .          .          .          .

"Q. Doctor, can a person who suffers from a manic-depressive condition, manic type, give the impression of being normal without being so?

"A. It would be rather difficult, inasmuch as the state of a manic condition is something of which any person, unfamiliar with medicine or psychiatry, may become aware, because it is precisely the picture that brings to mind the meaning of a state of insanity, that is, it is unmistakable.

" .          .          .          .          .          .          .

"A. In a manic condition I say that he can not, for the person has no control whatever over his emotions and therefore he could not pretend to be calm while being in a manic state."

Dr. Massanet was the specialist who testified at the hearing of the case concerning the determination of incapacity.

"Q. Do you consider this lady's mental condition . . .

"A. She is perfectly competent.

"Q. To govern herself and administer her property?

"A. Yes, sir.  I suggested to her to be present here in court. . .

"Counsel: She is here in court."

Plaintiff went to execute the deed of power of attorney before Notary Rebollo López in Fajardo.  She is described by the notary as follows:

"Well . . . Doña Luz behaved as a completely normal person.  Furthermore, I had no idea she had ever been ill. Her behaviour was completely normal; completely reasonable.  She answered all my questions, gave no sign leading me to think that she was suffering from any mental illness."

In *Fuentes* v. *Federal Land Bank*, 64 P.R.R. 193, 196 (1944), involving a person who had entered into a contract during a period of recession, we said:

" . . . But since according to § 1214, consent is shown by the concurrence of offer and acceptance with respect to the thing and the consideration which are to constitute the contract, it is at that very moment when the meeting of the minds takes place that the capacity to give consent must exist . . ."

To the same effect: *Rivera* v. *Heirs of Díaz*, 70 P.R.R. 168, 175 (1949), where we held that:

" . . . The party may be insane from the standpoint of the psychiatrist, and yet be mentally competent to understand the scope of a particular transaction."

In deciding the instant case, the trial court said:

"If we bear in mind that plaintiff has been on various occasions in recession of symptoms; that she was rehabilitated by the court on petition of her husband on October 18, 1940; that she executed a power of attorney in favor of her husband on November 16, 1940, and availing himself of said power of attorney her husband executed the documents whose nullity she now seeks; that she was released from the Insane Asylum in recession of symptoms on August 27, 1940, and that her husband had the opportunity of noticing his wife's behavior in order to know whether he should act as his attorney-in-fact or by virtue of judicial authorization to execute the settlement of the suits, we must necessarily conclude that plaintiff enjoyed sufficient capacity at the time she executed the power of attorney and the transaction was carried into effect. Decision to the contrary would be tantamount to finding that everything done by her attorney-in-fact was done in bad faith, in order to destroy defendants' right to continue with their appeal, and finding also that both, the declaration of rehabilitation to enable her to act for herself in the documents of settlement and the last declaration of incompetency to file this suit, were done in bad faith."

We are convinced that the evidence clearly shows that when plaintiff executed the deed of power of attorney in favor of her husband she was in the full exercise of her capacity to bind herself. The expert and oral testimony so prove it. Nothing in the evidence indicates that she was not

when she signed the compromise agreement on October 28, 1941, or when as attorney-in-fact for her and her sisters, her husband appeared to ratify the agreement between the parties. It should be noted that subsequently to the dates on which the power of attorney was executed and the compromise with the defendants was entered into, plaintiff herein appeared twice in court in her own behalf. There is nothing in the evidence to justify any modification to the finding of the trial court.

The judgment entered by the Superior Court, San Juan Part, on January 25, 1955, will be affirmed.